IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Robert Raymond Robison, Jr.,       )
    Petitioner,                    )
                                   )
v.                                 )      1:08cv1140 (TSE/TCB)
                                   )
George Hinkle,                     )
    Respondent.                    )

FILED APR 2 2 2009 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

This petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 presents the following equitable tolling questions:

> 1) Is mental incapacity a valid basis for equitable tolling of the one-year statute of limitations applicable to habeas petitions filed pursuant to § 2254?
>
> 2) And, if so, whether this petitioner has alleged facts sufficient to trigger the application of equitable tolling?

Most courts have sensibly concluded that mental incapacity or disability, in appropriate circumstances, can rise to the level necessary to trigger equitable tolling. More difficult is the question whether a particular case rises to that level. For the reasons that follow, this petitioner's allegations and his supporting materials fall short of warranting equitable tolling.

I.

Robert Raymond Robison, Jr., a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his August 16, 2002, conviction in the Circuit Court for the City of Virginia Beach, Virginia for (i) first degree murder, (ii) attempted malicious wounding, (iii) armed statutory burglary, (iv) possession of a firearm by a convicted felon, and (v) two counts of use of a firearm in the commission of a felony. On January 7, 2003, the state circuit court sentenced petitioner to forty-three years in prison. Commonwealth v. Robison, Nos.

CR02000134-00 through CR02000134-05 (Va. Cir. Ct. Jan. 7, 2003). Petitioner appealed his conviction to the Court of Appeals of Virginia, which denied his petition for appeal on October 8, 2003. Robison v. Commonwealth, No. 0261031 (Va. Ct. App. Oct. 8, 2003). Petitioner then appealed his conviction to the Supreme Court of Virginia, which refused his petition for appeal on April 2, 2004. Robison v. Commonwealth, No. 032582 (Va. Apr. 2, 2004). Petitioner's conviction became final on July 1, 2004, the last date he could have petitioned the Supreme Court of the United States for a writ of certiorari.[1]

On May 17, 2005, petitioner filed a petition for a writ of habeas corpus in the Circuit Court for the City of Virginia Beach. The circuit court dismissed his petition on August 16, 2005. Robison v. Commonwealth, No. CL05001386-00 (Va. Cir. Ct. Aug. 16, 2005). Petitioner did not appeal the circuit court's dismissal of the petition, but filed instead a second petition for a writ of habeas corpus in the Supreme Court of Virginia on August 25, 2008. The Supreme Court of Virginia then dismissed this petition on September 15, 2008. Robison v. Warden, Greensville Correctional Center, No. 081667 (Va. Sept. 15, 2008).

Thereafter, petitioner filed the instant petition on October 31, 2008, alleging six claims of ineffective assistance of counsel, three claims of judicial misconduct, and three claims of prosecutorial misconduct.[2] Pet. 4-10. Petitioner correctly acknowledges that his petition was not filed within the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d). Indeed, it is clear

---

[1] See U.S. Sup. Ct. R. 13(1) (petitions for review are timely filed within 90 days of the entry of judgment by a state court of last resort); see also Lawrence v. Florida, 549 U.S. 327, 333 (2007) (reaffirming the inclusion of time for seeking review by the Supreme Court in calculating when direct review of a state criminal conviction becomes final under § 2244(d)).

[2] On November 3, 2008, shortly after filing his petition, petitioner submitted the $5.00 filing fee, as required by 28 U.S.C. § 1914(a).

that the petition was filed 1,068 days beyond the one-year limitations period.[3] Even so, petitioner argues the untimeliness of his petition should be excused owing to his mental incapacity or incompetence. Pet. 12. In this regard, petitioner alleges that he was rendered mentally incompetent "due to the various prescribed psychotropic drugs and medications" that he had been taking at various intervals since 2003. Pet. 12. Specifically, petitioner claims he suffered "serious adverse reactions" from taking the prescribed medications, and that he suffered these reactions continuously since being "deemed mentally incompetent and placed on 'Mental Health' status." Pet. 13. He states that from March 2005 to the present, he has been taking 100 milligrams of Imipramine, that from March 18, 2003, through March 1, 2005, he took 20 milligrams of Prozac, and that from March 29, 2004, through March 1, 2005, he took 200 milligrams of Wellbutrin. Pet. 13-14. Absent from the petition is any indication of the intervals at which he took these medications, although petitioner avers that he would be "punished through loss of privileges" if he refused to take his medications. Pet. 14. And, while the petition lists the side effects some persons might experience from taking

---

[3] A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Here, even excluding the time during which state collateral proceedings pursued by petitioner were pending, the instant federal petition is still untimely. See 28 U.S.C. § 2254(d)(2); Pace v. DiGuglielmo, 544 U.S. 408 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Between July 1, 2004, the date petitioner's conviction became final, and May 17, 2005, the date petitioner filed his state habeas petition, 320 days passed. Petitioner's effort to obtain state habeas relief became final on September 15, 2005, thirty days after the circuit court denied his petition and petitioner's time to appeal that decision to the Supreme Court of Virginia expired. Between September 15, 2005, and August 25, 2008, the date petitioner filed his petition in the Supreme Court of Virginia, 1,075 days passed. Finally, between September 15, 2008, when the Supreme Court of Virginia dismissed the petition, and October 23, 2008, the date petitioner placed his federal petition in the prison mail system, an additional 38 days passed. When these days are combined they establish that the instant petition was filed 1,068 days beyond the one-year limit.

these prescribed medications,[4] it is silent on which, if any, of these side effects petitioner actually experienced. Pet. 13-14. Petitioner also alleges that he suffered from severe clinical depression with suicidal tendencies and was placed on suicide watch before, during, and after his criminal trial.[5] Pet. 12. He references his placement on "Mental Health" status during his incarceration, and states he was denied access to the law library while in the Mental Health Housing Unit, although he does not indicate when he was in this unit or for how long. Pet. 14. Petitioner argues that these facts warrant equitable tolling and asks for a merits review of his petition.

By Order dated December 29, 2008, petitioner was informed that his petition was untimely and would be dismissed as time-barred unless he contested the application of the one-year statute of limitations or established that he was entitled to equitable tolling within thirty days of the date of the Order. Petitioner was informed that he had not yet presented facts sufficient to support equitable tolling, but that he would be given another opportunity to do so as required by Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (requiring notice and the opportunity to respond before a sua sponte dismissal under § 2244(d)). Petitioner responded to this Order on January 28, 2009, by submitting

---

[4] According to petitioner, Imipramine can cause "states of confusion with hallucinations, disorientation, delusions, anxiety, restlessness, agitation; insomnia and nightmares; hypomania; exacerbation of psychosis." Pet. 13. Prozac may cause similar symptoms according to petitioner, including "states of confusion with disorientation, delusions, anxiety, restlessness, agitation; insomnia and nightmares; emotional instability; hypomania; personality changes and hyperactivity." Pet. 13. Finally, Wellbutrin, according to petitioner, may cause "states of confusion with suicidal ideation, sexual dysfunction, mood instability, episodes of over-activity; extreme swings from calmness to elation to irritability; (Stevens-Johnson syndrome) - blurred vision, difficult breathing, chest pains with chills and loss of motor functions - possible seizures may occur." Pet. 13-14. In addition, petitioner claims that all three drugs can enhance the depressant effects of alcohol and may impair mental and/or physical abilities to perform normal daily activities. Pet. 13-14.

[5] Although petitioner does not provide specific dates in his Response, a review of the Virginia Courts Case Information System indicates that the grand jury was convened on February 4, 2002, petitioner was convicted on August 16, 2002, and he was sentenced on January 7, 2003.

(i) a Response, (ii) a Motion for Appointment of Counsel, and (iii) a Motion for an Evidentiary Hearing. In his Response, petitioner argues that he should be entitled to equitable tolling because of "extraordinary circumstances." Resp. 1. He states he was mentally incapacitated before he committed the crimes for which he was convicted, and that at the time, he was seeking help for chemical substance abuse and acute depression. Resp. 1. In support of this claim, petitioner attaches numerous documents from the North Carolina Division of Mental Health, Developmental Disabilities and Substance Abuse, captioned as "Exhibit A." Ex. A to Resp. The documents include an Admission and Eligibility Assessment, dated February 15, 2001, and various notes from individual therapy appointments that took place on February 15, February 19, February 26, March 21, and May 7, 2001. Ex. A to Resp.

Petitioner also states in his Response that, as a result of prescribed medications, he was mentally incapacitated before criminal proceedings commenced and during the trial. Resp. 1. In support of this claim, petitioner attaches numerous documents from the Virginia Beach Correction Center, captioned as "Exhibit B." Ex. B to Resp. The documents include an Intake Mental Health Screening and Assessment, dated October 18, 2001; a Mental Status Exam, dated October 19, 2001; numerous "Interdisciplinary Progress Notes," dated from October 22, 2001, through January 24, 2003; and four sick call requests, dated June 24, August 9, and November 18, 2002, and March 4, 2003.[6] Ex. B to Resp. Petitioner also attaches assorted pages of his trial transcript, captioned as

---

[6] Petitioner also includes a New Patient Physician Work-Up and Orders from the Beach Health Clinic in Virginia Beach, Virginia, dated March 21, 2001, and a physical assessment from an unknown facility located in Virginia Beach dated October 31, 2001. Neither of these documents is instructive for resolution of the instant issue. The Physician Work-Up is indecipherable, and the physical assessment, which was done prior to petitioner's trial, indicates only that he self-reported taking Valium, cocaine, Paxil, and Codeine. Ex. B to Resp.

5

"Exhibit C," which include (i) two pages of a dialogue between the trial judge and petitioner's attorney regarding the need to administer petitioner's medication to him prior to the start of the trial, and (ii) three pages of the direct examination of a witness listed as M. Bohan, who performed a chemical dependency assessment on petitioner prior to trial. Ex. C to Resp. Petitioner adds that he was diagnosed as having "post-traumatic stress syndrome [and] acute depression disorder with suicidal tendencies." Resp. 1. Petitioner asserts that he has been mentally incapacitated "through prescribed medications during his entire post-conviction incarceration with 'Mental Health' status over 80% of his post-conviction incarceration." Resp. 2.

## II.

Although the Supreme Court of the United States has never squarely addressed the question whether equitable tolling applies to petitions for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254,[7] this circuit and others have done so, holding that equitable tolling is available to toll the one-year statute of limitations in § 2244(d).[8] Importantly, however, courts have made clear that equitable tolling is not easily invoked; in this respect, the Fourth Circuit has cautioned that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and

---

[7] See Pace, 544 U.S. at 418 n.8 (noting that the Supreme Court has never addressed the question of whether equitable tolling is applicable to Antiterrorism and Effective Death Penalty Act's ("AEDPA") statute of limitations, but assuming without deciding its application for the purposes of the case).

[8] See, e.g., Harris v. Hutchinson, 209 F.3d 325, 329-30 (4th Cir. 2000); Urcinoli v. Cathel, 546 F.3d 269, 272 (3d Cir. 2008); Holland v. Florida, 539 F.3d 1334, 1338 (11th Cir. 2008); Coppage v. McKune, 534 F.3d 1279, 1280 (10th Cir. 2008); Riddle v. Kemna, 523 F.3d 850, 857 (8th Cir. 2008); Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007); Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000); Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998); but cf. Williams v. Buss, 538 F.3d 683, 685 (7th Cir. 2008) (noting that the Seventh Circuit has never expressly decided whether equitable tolling should be available for § 2254 petitions).

infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330. Consequently, "any resort to equity must be reserved for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id. Accordingly, a petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).

The question whether a petitioner's claim of mental incapacity is an extraordinary circumstance sufficient to warrant equitable tolling does not appear to have been frequently litigated in this circuit; the Court of Appeals has addressed this issue in only one published opinion.[9] In United States v. Sosa, 364 F.3d 507 (4th Cir. 2004), the court briefly discussed whether a claim of mental illness could justify tolling the statute of limitations for a § 2255 petition. The court explained that "[a]s a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity," and it concluded that Sosa's asserted condition — schizoaffective disorder and generalized anxiety disorder — did not rise to this level.[10] Id. at 513.

---

[9] It is worth noting, however, that the Fourth Circuit, in an unpublished decision, has held that, in appropriate circumstances, mental incapacity may excuse a procedural default. Farabee v. Johnson, 129 F. App'x 799, 802-04 (4th Cir. 2005) (unpublished) (assuming that, in appropriate circumstances, mental illness could constitute cause to excuse procedural default, but finding in the case there presented that a petitioner, who had attempted suicide and been committed to a mental hospital, had not demonstrated that mental illness actually caused his procedural default).

[10] In support of its conclusion, the Fourth Circuit cited only Grant v. McDonnell Douglas Corp., 163 F.3d 1136 (9th Cir. 1998), which assumed without deciding that the limitations period for claims filed under § 301 of the Labor Management Relations Act is subject to equitable tolling.

7

Consistent with Sosa, other circuits have concluded that in certain circumstances mental incapacity can trigger tolling.[11] Importantly, however, courts that so hold have also sensibly found that while the "mental incapacity of the petitioner can warrant the equitable tolling of the statute of limitations ... mental incompetence is not a per se reason to toll a statute of limitations." McSwain, 287 F. App'x at 456 (citations omitted); see also Nara, 264 F.3d at 320. To prove entitlement to equitable tolling, a petitioner "must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected [his] ability to file a timely habeas petition." McSwain, 287 F. App'x at 456 (citations omitted).[12] Thus, a bare assertion that a petitioner suffers from some mental impairment, "without more, is insufficient to justify equitable tolling." Lawrence, 421 F.3d at 1227.[13] Similarly, proof of an existing mental illness, or claims that a petitioner is taking

---

[11] See, e.g., Lawrence v. Florida, 421 F.3d 1221 (11th Cir. 2005), aff'd on other grounds 549 U.S. 327 (2007); Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003); Nara v. Frank, 264 F.3d 310 (3d Cir. 2001), overruled on other grounds by Carey v. Saffold, 536 U.S. 14 (2002); McSwain v. Davis, 287 F. App'x 450 (6th Cir. 2008) (unpublished); cf. Rios v. Mazzuca, 78 F. App'x 742 (2d Cir. 2003) (unpublished) (assuming without deciding that mental incapacity could toll the statute of limitations); Fisher v. Johnson, 174 F.3d 710 (5th Cir. 1999) (recognizing in *dicta* the possibility that mental incompetency might support equitable tolling).

[12] See also Nara, 264 F.3d at 320 (stating that "the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition"); Smith v. Johnson, 247 F.3d 240, 2001 WL 43520, at *3 (5th Cir. 2001) (table) (holding that claims of incompetence do not automatically entitle a petitioner to equitable tolling, and that the petitioner must sufficiently allege facts indicating that his incompetence impeded him from asserting legal rights); Ramey v. Lewis, 189 F. App'x 607, 609 (9th Cir. 2006) (unpublished) (deciding that equitable tolling was unwarranted for alleged mental incompetency because the record failed to reflect that the incompetency could have impaired petitioner from timely filing).

[13] See also Fisher v. Gibson, 262 F.3d 1135, 1145 (10th Cir. 2001) (determining that petitioner's mere allegations of incompetency at the time of his guilty pleas were insufficient to invoke equitable tolling); Rios, 78 F. App'x at 744 (explaining that the inquiry is highly fact-specific, requiring a "particularized description" of how petitioner's condition adversely affected his capacity to "function generally or in relationship to the pursuit of his rights"); Collins v. Scurr, 230 F.3d 1362, 2000 WL 1341544, at *1 (8th Cir. 2000) (table) (not expressly holding that mental incompetence would justify

psychiatric medication or is under psychiatric care will not automatically warrant equitable tolling.[14] A petitioner must also allege facts sufficient to demonstrate the existence of "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing . . . ." Rios, 78 F. App'x at 743.[15] Additionally, where a petitioner has filed other pleadings during the alleged period of incompetency, courts are often unwilling to find equitable tolling appropriate.[16]

---

application of equitable tolling, but deciding on the merits that petitioner's "bald and unsupported assertions" of mental incompetency were insufficient to meet the threshold necessary to toll the statute of limitations); Simpson v. Greene, No. 03Civ.6323 GEL, 2003 WL 22999489, at *2 (S.D.N.Y. Dec. 22, 2003) (deciding that "conclusory factual averments" regarding petitioner's mental incapacitation and a failure to explain how his condition adversely affected his ability to function or pursue his rights was "manifestly insufficient" to justify equitable tolling). But see Laws, 351 F.3d at 924 (holding that petitioner's "unrebutted allegation, in his state petition, that he was deprived of any kind of consciousness" during the years in question was sufficient to warrant remand for a hearing).

[14] See Francis v. Johnson, 233 F.3d 575, 2000 WL 1468760, at *1 (5th Cir. 2000) (table) (holding that petitioner's claims that he was taking large doses of medication and was under psychiatric care were insufficient to support allegations of mental incompetency); McSwain, 287 F. App'x at 457 (determining that although the petitioner had ample evidence of her mental illness, she had no evidence that supported a causal connection between her illness and her ability to file timely her habeas petition).

[15] See also Smith v. Kelly, No. 07-60276, 2008 WL 5155222, at *3 (5th Cir. Dec. 9, 2008) (explaining that equitable tolling was inappropriate where petitioner failed to allege how his mental illness prevented him from pursuing his legal rights); Nowak v. Yukins, 46 F. App'x. 257 (6th Cir. 2002) (unpublished) (finding that, despite extensive records of petitioner's mental health issues, the records did not reflect that petitioner was incompetent or incapable of preparing and filing her habeas petition). For additional cases, see supra Note 12.

[16] See, e.g., Bilbrey v. Douglas, 124 F. App'x 971, 973 (6th Cir. 2005) (unpublished) (finding that although petitioner had "continuing mental health problems" during the entire period in question, petitioner continued to file litigation in state courts, thus equitable tolling was not appropriate because petitioner failed to show a causal connection between her mental condition and her ability to file timely); Walker v. Schriro, 141 F. App'x 528, 530-31 (9th Cir. 2006) (unpublished) (holding that where petitioner was able to complete various filings in state court close to the dates of his AEDPA filing period, the district court reasonably concluded that petitioner was capable of filing

9

In sum, the following sound principles find firm support in the cases and are applicable here:

1. Mental incapacity or incompetency, in appropriate circumstances, may warrant the application of equitable tolling.

2. Application of the doctrine in this context, as in all contexts, must be rare, and tolling should apply only where the petitioner has alleged facts showing that his mental incapacity or incompetency amounted to an extraordinary circumstance.

3. In addition to proving that a petitioner suffered from a qualifying mental incapacity or incompetency, a petitioner must also demonstrate this condition prevented him from filing a timely petition.

4. A petitioner's ability to make other legal filings during the alleged period of his incompetency counsels strongly against allowing equitable tolling of a petitioner's federal habeas petition.

These principles, applied here, point persuasively to the conclusion that petitioner has failed to establish mental incapacity sufficient to warrant equitable tolling.

To begin with, it is necessary to specify the time periods for which tolling is sought. Here, as often occurs, petitioner pursued state habeas remedies during certain periods of time between the date his conviction became final and the filing of the federal habeas petition. The one-year period was statutorily tolled during those periods, and hence the equitable tolling inquiry is relevant only with respect to the time periods for which there was no statutory tolling, namely (i) between July 1, 2004, the date petitioner's conviction became final, and May 17, 2005, the date petitioner filed his

---

his federal petition on time and was not entitled to equitable tolling); Rios, 78 F. App'x at 745 (recognizing petitioner's ability to "pursue legal avenues" militated against allowing equitable tolling where petitioner defended himself in an INS removal proceeding, filed a complaint against his state trial court judge with the Commission on Judicial Conduct, wrote numerous requests for transcripts of his sentencing hearing, filed a proceeding against the New York State Parole Board, and engaged in other similar legal proceedings shortly after his limitations period expired); Smith v. Saffle, 28 F. App'x 759, 760 (10th Cir. 2001) (unpublished) (finding that a petitioner's ability to file other actions in court defeated petitioner's claimed entitlement to equitable tolling for mental incompetency).

10

state habeas petition; (ii) between September 15, 2005, when the denial of petitioner's state habeas petition became final, and August 25, 2008, the date petitioner filed his petition in the Supreme Court of Virginia; and (iii) between September 15, 2008, the date petitioner's state habeas petition was dismissed by the Supreme Court of Virginia, and October 23, 2008, the date petitioner placed the instant federal petition in the prison mail system. The question, then, is whether petitioner has made the requisite threshold showing that during these time periods he was mentally incompetent or incapacitated and that this condition caused or substantially contributed to the untimeliness of his federal petition.[17]

Petitioner has failed to make this showing; he has failed to show that he suffered a mental condition that incapacitated him; he has failed to show that any mental incapacity he suffered interfered with his ability to file papers or pleadings during the relevant periods; and he has failed to rebut the inference that his claim of mental incapacity is belied by his filing activity during or near the relevant periods. All of this is confirmed by a careful parsing of both petitioner's allegations and the supplemental materials he submitted.

First, petitioner has not alleged a mental condition sufficiently severe or substantial to warrant equitable tolling. Distilled to its essence, petitioner asserts that he suffered from depression, suicidal thoughts, and more recently, though without any supporting documentation, post-traumatic stress disorder ("PTSD"). Resp. 1. He alleges that these conditions existed from the time of his trial and continued through the date of the filing of the instant petition. Resp. 1-2. Petitioner also alleges that he was "mentally incapacitated" as a result of taking prescribed psychiatric medications for the

---

[17] See Smith, 247 F.3d 240, 2001 WL 43520, at *3 (holding that bare allegations of mental incompetence are insufficient to apply equitable tolling, and that petitioner must present facts showing that his alleged incompetence impeded him from filing in a timely manner).

entire period of his "post-conviction incarceration." Resp. 2. He claims the medications he was taking caused "serious, adverse reactions that the petitioner experienced continually since he has been deemed mentally incompetent and placed on 'Mental Health' status." Pet. 13. Although he lists (i) the two medications he took from 2003-2005, (ii) the one medication he continues to take, and (iii) the possible side effects of all three medications, he fails to allege which, if any, side effects he experienced. In any event, none of these allegations, individually or cumulatively, establish a mental incapacity sufficient to justify equitable tolling.

In support of his claim of mental incapacity due to his mental illness, petitioner submits numerous attachments in Exhibits A and B documenting his mental health treatment from 2001 to 2003. Exhibit A contains 2001 mental health screenings noting that petitioner was depressed and experienced suicidal ideation. Yet, these documents also clearly state that petitioner's thought process was coherent and rational, and that he had no psychotic symptoms, attention problems, or hallucinations. See "Admission and Eligibility Assessment," Ex. A to Resp. Essentially similar notations appear in Exhibit B, the "Correctional Medical Services Inmate Mental Health Screening and Assessment." Similarly, the "Progress Notes" submitted with Exhibit B, which detail the results of petitioner's psychiatric sessions from 2001-03, indicate that petitioner initially required housing in the mental health unit and experienced suicidal thoughts, but within one month (i) his mood was stable, (ii) he was placed in the general population, (iii) he was willingly taking his psychiatric medications, which he said "really helps his attitude," and (iv) he was not psychotic, paranoid, or having suicidal thoughts. Ex. B to Resp.

These materials, taken together, fall short of establishing a mental incapacity sufficient to warrant equitable tolling. They certainly do not establish a "profound mental incapacity," as required

in Sosa. 364 F.3d at 513. At best, these materials reflect that during the 2001-03 time period, petitioner had certain mental health problems, chiefly depression and perhaps PTSD, none of which establish that he was mentally incompetent or incapacitated such that he was unable to prepare or file a timely petition during the relevant time period. See Sullivan v. Doe, No. 07-2092, 2008 WL 4083176, at * 8 (E.D. Pa. Aug. 28, 2008) (finding that plaintiff's alleged diagnosis of PTSD and depression, without any official documentation in support of such claims, failed to demonstrate extraordinary circumstances to warrant equitable tolling); Rios, 78 F. App'x at 744 (noting that although petitioner's medical records showed a decline in his condition after his sentencing, they later showed improvement and did not reflect that petitioner had "significant, let alone insurmountable" problems with his mental status such that he was unable to file a timely petition); Nowak, 46 F. App'x at 259 (holding that although the records demonstrated that petitioner suffered from significant depression, they did not reflect that petitioner was incompetent or incapable of preparing and filing her habeas petition).

Nor is petitioner's equitable tolling claim saved by his assertion that he has been "under 'Mental Health' status" at various times during his incarceration and that he continues to "visit with doctors and social workers regularly." Resp. at 2. A claim of continuing psychiatric care is insufficient to trigger equitable tolling. See Lawrence, 421 F.3d at 1227 (recognizing that a petitioner's allegations that he has been and continues to be under psychiatric care do not entitle him to equitable tolling, as such basic allegations fail to rise to the level of extraordinary circumstances); Francis, 233 F.3d 575, 2000 WL 1468760, at *1 (holding that petitioner's claims that he was under psychiatric care were insufficient to support allegations of mental incompetency). Significantly, it does not appear that petitioner was committed or confined in isolation during the relevant period,

nor that his appointments with doctors and social workers were anything other than routine visits to maintain or improve his mental health.

Similarly, petitioner's medication claims are of no avail. Although he lists medications he has taken and their possible side effects and asserts they caused him to be incapacitated, he does not state which, if any, of the possible side effects he suffered, how the side effects caused him to be incapacitated or when this occurred. Essentially no documentation supports his medication claim. Petitioner also points to an excerpt from his trial record that actually contradicts rather than supports his medication claim. This excerpt reflects that his defense counsel expressed concern to the trial judge that petitioner had not received his medication the day of the trial and was "bouncing off the walls" without it. Counsel asked the trial judge to ensure that petitioner received his medication prior to testifying. Thus, rather than support petitioner's claim for equitable tolling, this trial record excerpt undermines it; it reflects that petitioner's medications did not incapacitate him, but rather helped him function. See Brown v. McKee, 232 F. Supp. 2d 761, 768 (E.D. Mich. 2002) ("More importantly, the fact that petitioner has been receiving psychotropic medications would actually weigh more in favor of his being able to function than not.") (internal quotation marks omitted); see also Francis, 233 F.3d at 575, 2000 WL 1468760, at *1 (holding that allegations by petitioner that he was taking large doses of psychiatric medication did not automatically warrant equitable tolling).

Quite apart from the absence of a qualifying mental incapacity, petitioner has failed to allege any facts, or to produce any evidence, to establish a causal nexus between his alleged incompetence and his failure to file his petition in a timely manner. See Nara, 264 F.3d at 320 (requiring that petitioner show "the alleged mental incompetence . . . affected the petitioner's ability to file a timely habeas petition"). All of petitioner's documentation regarding the existence of any mental problem

14

pre-dates the period for which petitioner seeks equitable tolling. Thus, even assuming petitioner's depression and PTSD were severe enough to warrant equitable tolling, petitioner's submissions contain no information indicating that petitioner was mentally incapacitated during the relevant periods, or that petitioner's alleged mental illness prior to his conviction had any bearing on the untimely filing of the instant federal petition. See Rios, 78 F. App'x at 744-45 (finding that equitable tolling was not warranted where record disclosed no causal nexus between claimed mental disability and failure to file timely petition). Courts have consistently held that a failure to link a mental condition to a failure to file a timely petition is fatal to a petitioner's claim for equitable tolling.[18] And, once again, the trial record refutes petitioner's claim of mental incapacity or incompetence even for the period he has submitted documentation. There is, after all, no indication that he was other than entirely competent to stand trial and assist in his defense.

The absence of a showing of a causal nexus between petitioner's claimed mental incapacitation and the tardiness of his petition finds further support in petitioner's filing activities during the relevant period. Thus, between the end of his direct appeal on April 2, 2004, and the filing of his federal petition on October 31, 2008, petitioner filed a state habeas corpus petition in the Circuit Court for the City of Virginia Beach on May 17, 2005, and a second petition for a writ of habeas corpus in the Supreme Court of Virginia on August 25, 2008. This filing activity refutes his claim of incapacity during this period. See Price v. Lewis, 119 F. App'x 725 (6th Cir. 2005) (unpublished) (holding that a petitioner who was able to file legal papers during the period of his

---

[18] See Collins, 230 F.3d 1362, 2000 WL 1341544, at *1 (noting that allegations of mental incompetency that occurred during a "remote" time period were insufficient to warrant equitable tolling); Fisher, 262 F.3d at 1145 (holding that allegations of incompetency during a time that pre-dated the relevant period for equitable tolling did not warrant applying the doctrine).

15

alleged incapacity is not entitled to equitable tolling); Bilbrey, 124 F. App'x at 973 (finding that petitioner's claims of "continuing mental health problems" during the entire period in question were undercut by petitioner's continued filing of litigation in state courts); Walker, 141 F. App'x at 530-31 (determining that petitioner was capable of filing his federal habeas on time because the record showed that petitioner was able to complete various filings in state court close to the dates of his AEDPA filing period); Rios, 78 F. App'x at 745 (finding that petitioner's engagement in numerous legal proceedings shortly after his limitations period expired weighed strongly against petitioner's claim of entitlement to equitable tolling).

Petitioner also admits in his Response that he has tried "repeatedly" to gain access to the courts through the use of the law libraries at Sussex I and Greensville, the facilities where he has resided since 2003. Resp. 3. He notes that inmates housed in mental health units are not afforded physical access to law libraries at either facility.[19] Yet, to the extent petitioner claims that he is entitled to equitable tolling due to his lack of access to the law library, petitioner contradicts his own position. He states that "requests are regularly processed, but Level IV Mental Health Status [sic] refused movement to the Law Libraries." Resp. 3. In other words, while petitioner was not afforded physical access to the library while in a mental health unit, he was permitted to request legal materials. Petitioner does not allege that this process was in any way inadequate, and he fails to allege how his lack of physical access to the library impacted his ability to file timely.[20] By his own

---

[19] Petitioner states that he currently is housed in the general population at Greensville, and no longer resides in the mental health unit. He does not indicate when he was returned to the general population.

[20] See, e.g., Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (holding that petitioner's failure to provide specific information regarding his alleged lack of access to legal materials was fatal to his claim of entitlement to equitable tolling).

16

admissions, therefore, petitioner acknowledges that he has been aware of his post-conviction remedies since 2003, but he failed to pursue them in a timely fashion.

Petitioner's equitable tolling argument relies on a single case — Douglas v. York County, 360 F.3d 286 (1st Cir. 2004). Yet, this case is of no avail to plaintiff, as it is clearly distinguishable. In Douglas, a plaintiff filed a civil rights complaint alleging that she had been gang raped more than thirty years prior to filing the lawsuit. Id. at 287. Plaintiff argued she had suffered from "pervasive mental illness for years," and that the applicable statute of limitations should therefore be tolled under Maine law. Id. Thus, although the underlying issue in Douglas was equitable tolling, it was in the context of a state tolling statute as it related to a civil rights complaint, not, as here, federal law applicable to a federal habeas petition. Moreover, the First Circuit in deciding Douglas did not reach the merits of the equitable tolling question, but instead held only that because there were conflicting expert affidavits on the issue of plaintiff's alleged mental illness, the district court erred when (i) it construed an affidavit ambiguity against plaintiff, the non-moving party, in deciding a motion for summary judgment, and (ii) it injected a new issue into the affidavits when ruling on the motion for summary judgment without giving the parties "adequate warning" and without accepting the plaintiff's "prompt proffer of material relevant to the newly-raised issue." Id. at 290. Thus, given that the First Circuit did not even engage the merits of the equitable tolling issue in Douglas, but instead reversed and remanded the case for the district court "to do so in the first instance," that case does not support petitioner's equitable tolling claim in any respect.

Not cited in his petition or response, but arguably favorable to petitioner's claim for equitable tolling in this instance, is the Ninth Circuit's opinion in Laws, 351 F.3d at 924. Yet, like Douglas, this case is also distinguishable. In Laws, the Ninth Circuit remanded the case to the district court

for further factual development of the equitable tolling issue based on petitioner's "unrebutted allegation, in his state petition, that he was 'deprived [ ] of any kind of cons[ci]ousness'" during the entire period in which his state and federal habeas petitions should have been filed. Id.[21] In doing so, the Ninth Circuit nonetheless recognized that "a petitioner's statements, even if sworn, need not convince a court that equitable tolling is justified should countervailing evidence be introduced." Id. Here, unlike Laws, the record is clear that petitioner has not alleged a mental condition sufficiently severe or substantial to warrant equitable tolling; no additional factual inquiry or expansion of the record is necessary.[22] Also unlike Laws, the instant record includes "countervailing evidence" that rebuts petitioner's allegations of mental incompetency, including, for example, evidence pertaining to petitioner's filing activities during the relevant time period. Id. Given these distinctions, Laws, like Douglas, does not support petitioner's equitable tolling claim.

### III.

For the reasons stated above, the instant petition must be dismissed as time-barred as it was filed 1,068 days beyond the one-year statute of limitations set forth in § 2244(d) and because petitioner has failed (i) to allege a mental condition sufficiently severe to warrant equitable tolling,

---

[21] See also Matthews v. Crones, 266 F. App'x 605, 606 (9th Cir. 2008) (unpublished) (holding that allegations in a verified petition that the petitioner was incompetent during the relevant time period, along with a medical report stating that during that time petitioner heard voices commanding him to harm himself and noting schizophrenic behavior by petitioner, without any evidence to rebut these allegations from respondent, were sufficient to necessitate remand for discovery, expansion of the record, or an evidentiary hearing as necessary to determine how much, if any, of the relevant time should be tolled).

[22] Although petitioner filed a Motion for an Evidentiary Hearing together with his Response, no such hearing is required in this instance because the facts and legal contentions are adequately set forth in the existing record and further development of the record would not aid the decisional process. See Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006); Green v. Johnson, 431 F. Supp. 2d 601, 608-17 (E.D. Va. 2006). Petitioner's motion in this regard will therefore be denied.

and (ii) to establish a causal nexus between any alleged mental incompetency and his failure to file his petition in a timely manner.

An appropriate Order shall issue.

Entered this 22d day of April 2009.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge